UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DORIS RICHARDS, et al.,

    Petitioners,

v.

CHRISTOPHER WONG, M.D. et al.,

    Respondents.

Civ. No. 14-3353 (PGS)

**OPINION**

**PETER G. SHERIDAN, U.S.D.J.**

## I. BACKGROUND

Plaintiffs Doris Richards, mother of Decedent, Lindsay Barber, daughter of Decedent, and the Estate of Joan Barber ("Decedent") come before the Court in a wrongful death action against Christopher Wong, M.D., Mercer County, CFG Health Systems, LLC, Warden Charles Ellis, and Graciano Zara, M.D. Three separate motions to dismiss were filed in this case: one on behalf of Christopher Wong, M.D.; another on behalf of Mercer County and Charles Ellis; and a third on behalf of CFG Health Systems, LLC and Dr. Graciano Zara, M.D. Plaintiffs then filed a motion for partial summary judgment against Dr. Wong.

A. Procedural History

On May 27, 2014, CFG Health Systems, LLC, and Graciano Zara, M.D. ("CFG" and "Zara," respectively) removed this case from the Mercer County Superior Court, Law Division, to federal court on the basis of federal question jurisdiction.[1] (*See* ECF No. 1.) On June 17, 2014, CFG and Zara filed an Answer to Plaintiffs' Complaint. (ECF No. 4.) On June 30, 2014, an

---

[1] Federal question jurisdiction is based on Claim Five of the Complaint, an Eighth Amendment claim. This claim is not the subject of any motion before the Court.

Answer was filed by Defendants Mercer County ("Mercer") and Warden Charles Ellis ("Ellis"). (*See* ECF No. 7.) Lastly, on October 6, 2014, Dr. Christopher Wong, M.D., ("Wong") filed his Answer to Plaintiffs' Complaint. (*See* ECF No. 11.)

On, November 11, 2014, CFG and Zara filed a motion to dismiss claims Three and Four of Plaintiffs' Complaint for failure to adhere to New Jersey's Affidavit of Merit statute, N.J.S.A. 2A:53A-27. (*See* ECF No. 14.) On December 4, 2014, Dr. Wong filed a motion dismiss for the same reason, citing the same statute. (*See* ECF No. 19.) On December 5, 2014, Mercer and Ellis filed a motion to dismiss also citing the same Affidavit of Merit statute. (*See* ECF No. 20.)

The same day, December 5, 2014, Plaintiffs filed a motion with the Court for an extension of time to file the aforesaid Affidavit of Merit ("AOM"). (*See* ECF No. 21.) On January 22, 2015, Plaintiffs filed a motion for partial summary judgment relating to the claims against Dr. Wong only. (*See* ECF No. 39.)

On April 28, 2015, the Court entered an Order denying Plaintiffs' motion for an extension of time to file AOMs as to all Defendants. (*See* ECF Nos. 46, 47.) This Court now considers all parties' motions together.

B. Facts

According to the Complaint, on or about October 31, 2011, Decedent was sentenced to a 55 day term of incarceration for shoplifting.[2] Decedent was incarcerated from October 31, 2011, to December 26, 2011 at the Mercer County Corrections Center. (*Id.*) Decedent was told that she could not bring her prescribed pain medication to prison with her, and then was denied pain medication from the prison medical personnel. (*Id.* ¶¶ 16-17.) Decedent was, however, prescribed an anti-depressant/sleep aid called Doxepin during her period of incarceration. (*Id.*)

---

[2] Facts taken from Complaint, ECF No. 1-1.

2

When Decedent was released from incarceration, she was given "no discharge information" from the prison and no instructions on whether to inform her family physician about her Doxepin prescription. (See ECF No. 1-1 at 3.)

Upon learning that Decedent would be released from prison, Plaintiff Richards, Decedent's mother, contacted Defendant Dr. Wong and informed his office that Decedent had been in prison for two months and without medication. (*Id.*) Plaintiff Richards then asked for a refill of Decedent's regular prescriptions: morphine, fentanyl, and oxycodone. Upon receiving this message, Dr. Wong refilled Decedent's prescriptions without inquiry. After arriving home, Decedent took her newly refilled medications and died three hours later. The Mercer County Medical Examiner determined Decedent's cause of death to be "mixed drug toxicity" brought on by the combination of morphine and Doxepin.

This suit followed and was initially filed in Mercer County Superior Court, Law Division. The suit was removed to the Court pursuant to 28 U.S.C. § 1441(c) by Defendants CFG and Mercer County.

## II. DISCUSSION

A. Defendants' Motions to Dismiss

In Counts One and Two of the Complaint, Plaintiffs allege that Defendant Dr. Wong committed medical malpractice by "fail[ing] to meet the appropriate standard of care." (*See* ECF No. 1-1 at 5.) Dr. Wong's failure allegedly arose from refilling Decedent's painkiller prescriptions without either examination or inquiry, and from his failure to speak with prison medical personnel despite having reason to know that Decedent was in prison and may have been treated there. (*Id.*)

3

In Counts Three and Four of the Complaint, Plaintiff alleges that CFG, Zara, Mercer County, and Ellis committed malpractice by releasing Decedent from prison without a discharge instruction relating to her Doxepin prescription. (*Id.* at 8.) Plaintiffs also allege that these Defendants breached their duty to Decedent when they, collectively, "refused or failed to prescribe medication for [Decedent's] leg and back pain" during the period of her incarceration. (*Id.* at 9.)

1. **Legal Standards**

    *a. Motion to Dismiss*

    In considering a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must " accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal quotations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citations omitted). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.* at 679.

    *b. Affidavit of Merit*

    The Affidavit of Merit statute ("AOM Statute" or "Statute"), N.J.S.A. 2A:53A-27, was passed in 1995 "to require plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious" so that meritless lawsuits could be more easily screened out. *Albrecht v.*

*Correctional Medical Services*, 27 A.3d 1260, 1263 (N. J. Super. Ct. App. Div. 2011) (internal citations omitted). The statute provides, in pertinent part:

> In any action for damages for personal injuries ... resulting from an alleged act of malpractice or negligence by a **licensed person** in his profession or occupation, the plaintiff shall, within **60 days** following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.

*See* N.J.S.A. 2A:53A-27 (emphasis added).

Therefore, for the AOM Statute to apply, an action for damages must result from an alleged act of malpractice from a licensed person and the AOM must be filed within 60 days of the filing of the Answer. An additional 60 days may be granted by a court for a showing a good cause. *Id.* The 120-day period during which to file an AOM has been held to be a "drop dead" date beyond which nothing may be considered. *See Shaker v. C.C.S. Medical Advisor*, 2014 WL 6885995, at *4 (D.N.J. Dec. 4, 2014) (citing *Douglass v. Obade*, 819 A.2d 445 (N.J. Super. Ct. App. Div. 2003)); *Timmons v. DeGuzman*, 2012 WL 5845623, at *2 (D.N.J. Nov. 20, 2012) (citing *Familia v. University Hosp. of University of Medicine and Dentistry of New Jersey*, 796 A.2d 302 (N.J. Super. Ct. App. Div. 2002)); *see also Ferreira v. Rancocas Orthopedic Assocs.*, 836 A.2d 779, 785 (N.J. 2003) ("If defense counsel files a motion to dismiss after the 120–day deadline and before plaintiff has forwarded the affidavit, the plaintiff should expect that the complaint will be dismissed with prejudice..."). If a Plaintiff fails to file an AOM within the 120-day period, a plaintiff's failure will be treated as a failure to state a cause of action and her

complaint will be dismissed with prejudice. *See Familia*, 796 A.2d at 306; *see also* N.J.S.A. 2A:53A-29.[3]

## 2. Analysis

As previously described, Plaintiffs raise several claims against Defendants CFG, Zara, Mercer County, Ellis, and Wong relating to Decedent's treatment while incarcerated and immediately thereafter. All Defendants moved to dismiss Plaintiffs' Complaint as to them for failure to file a timely AOM. The Court will analyze each Defendant's claims in turn.

### a. *Plaintiffs were required to serve an AOM on Defendant CFG, and thus CFG's Motion to Dismiss for want of a timely AOM is granted.*

Defendant CFG argues, as a threshold matter, that it is entitled to the protections afforded by the AOM Statute. (*See* ECF No. 14-6 at 5.) CFG argues that it should be considered a "licensed person" under the Statute, therefore necessitating the dismissal of Counts Three and Four as to CFG.

For the AOM Statute to apply, an action for damages must result from "an alleged act of malpractice or negligence by a *licensed person* in his profession or occupation. . . ." N.J.S.A. 2A:53A-27 (emphasis added). The legislature went on to delineate a number of licensed persons protected by the Statute, including "physician[s]," N.J.S.A. 2A:53A-26(f), and "health care facilit[ies]," *id.* ¶ (j).

In *Albrecht v. Correctional Medical Services*, the Appellate Division first held that a prison medical facility is not a "health care facility" under the AOM Statute unless it is actually licensed as such by New Jersey's Department of Health and Senior Services ("DHSS"). *See* 27

---

[3] In light of the Third Circuit's decision in *Nuveen Municipal Trust v. Withumsmith Brown*, Defendants should have filed their motions to dismiss as motions for summary judgment. *See* 66 F.3d 283, n. 13 (3d Cir. 2012). However, because the Court's disposition of the motions does not rely on information outside of the Complaint, we choose not to convert the motions here.

A.3d at 1264. The medical provider there, CMS, was not licensed by any governing body and was therefore not covered under the literal terms of the AOM Statute. The Appellate Division then considered whether CMS was nevertheless entitled to the protections of the AOM Statute as extended by two other New Jersey cases, *Shamrock Lacrosse, Inc. v. Klehr et al.*, 3 A.3d 518 (N.J. Super. Ct. App. Div. 2010), and *Nagim v. New Jersey Transit*, 848 A.2d 61 (N.J. Super. Ct. Law Div. 2003). *See id.*

The Appellate Division in *Shamrock* held that it would be "entirely anomalous" to allow a plaintiff to circumvent the rigors of the AOM requirement by naming only business entities as defendants as opposed to the professionals themselves. *See* 3 A.3d at 532. The Law Division in *Nagim* held that, although an engineering firm was not a "licensed person" under the literal terms of the Statute, the Statute nevertheless applied to the firm because "the purpose of the [AOM Statute] would be significantly thwarted if [the] plaintiffs could avoid [its] requirements ... by simply alleging professional negligence on the part of a firm of licensed professionals, without naming any such individual professional specifically." *See* 848 A.2d at 65. The Appellate Division in *Albrecht* then read the two cases together to mean that "when a firm's shareholders are licensed persons under the [AOM] statute, a plaintiff is required to provide an [AOM] in order to pursue litigation against the firm alone under respondeat-superior principles." *See* 27 A.3d at 1265.

Defendant CFG proffers no evidence that it is licensed as a "health care facility," and indeed does not argue otherwise. CFG argues, however, that although it is not a "licensed health care facility" under the Statute, it should nonetheless be considered a "licensed person" under the extensions announced in *Nagim* and *Shamrock Lacrosse*. (*See* ECF No. 14-6 at 6.) This Court agrees. CFG has only one shareholder, Dr. James R. Varrell, M.D. (*See* ECF No. 14-6 at 9.) It is

undisputed that Dr. Verrell is a licensed medical professional in the state of New Jersey. Because Dr. Verrell is duly licensed, the sole shareholder of CFG, and not specifically named himself in the Complaint, CFG is entitled to the protections afforded by the AOM Statute under *Shamrock* and *Nagin*. *See also Mora v. United States Dep't of Homeland Sec.*, No. 11-3321, 2013 WL 5180041 (D.N.J. Sep. 13, 2013) (affording CFG Health Systems protection under the AOM statute).

Because CFG is considered a "licensed person" under the AOM Statute, and this Court has already found that Plaintiffs did not timely file affidavits of merit against CFG, CFG's motion to dismiss for want of a timely AOM is granted. *See Richards v. Wong*, 2015 WL 1931486 (D.N.J. Apr. 28, 2015) (finding affidavits of merit were untimely and denying an extension).

        *b. Defendant Dr. Graciano Zara's Motion to Dismiss Counts Three and Four against Him is granted.*

Dr. Graciano Zara, M.D., was the "supervising physician and medical director" at the Mercer County Corrections Center during Decedent's period of incarceration. (*See* ECF No. 1-1 at 2.) During her period of incarceration, Decedent repeatedly sought relief for back and leg pain and was consistently denied such relief. (*Id.* at 3.) In its stead, the prison medical staff prescribed Decedent Doxepin, an anti-depressant and sleep aid. (*Id.*) In their Complaint, Plaintiffs allege that Zara breached his duty of care to Decedent and committed medical malpractice by (1) not giving Decedent any discharge papers or instructions on Doxepin and its toxic combination with morphine upon her release, and by (2) not prescribing Decedent with pain medications during her period of incarceration when he knew or had reason to know that she required them.[4]

---

[4] Counts Three and Four of the Complaint are referenced here as (1) and (2), respectively, for readability and ease of understanding.

Defendant Zara, in his motion to dismiss, argues that Plaintiffs' failure to timely serve an AOM on Zara as to Counts Three and Four of the Complaint is cause for dismissal. In Plaintiffs' opposition to Zara's motion to dismiss, it is argued both that their AOM was timely and that, in the alternative, Dr. Zara's actions fall within the "common knowledge" exception to the AOM requirement. (*See* ECF No. 22 at 16.) The Court will take each argument in turn.

### i. Plaintiffs' AOMs were Untimely.

First, as the Magistrate Judge ruled, it is now beyond dispute that Plaintiffs' AOMs were untimely. N.J.S.A. 2A:53A-27, *supra*, makes clear that a plaintiff has only 60 days from the filing of a defendant's answer to file an affidavit of merit. Additionally, the legislature only allows for one extension of an additional 60 days for good cause. *See Douglass, supra; Familia, supra*. The purpose of the Statute is to curtail frivolous litigation without preventing access to the courts for meritorious claims. *See Palanque v. Lambert-Woolley*, 774 A.2d 501, 505 (2001). A plaintiff's failure to serve an AOM within 120 days of the filing of the answer is considered no different from failing to state a cause of action, thus subjecting the complaint to dismissal. *See* N.J.S.A. 2A:53A-29.

The Court has held, specifically, that Plaintiffs here failed to serve an AOM within the Statute's mandatory 120-day period and did not warrant an extension. *See Richards v. Wong*, No. 14-3353, 2015 WL 1931486 (D.N.J. Apr. 28, 2015). Therefore, as has already been decided by the Court, Plaintiffs' AOMs were untimely as a matter of law.

ii.  Affidavits of Merit were necessary here because Zara's negligence does not fall within the common knowledge exception to the Affidavit of Merit Statute.

In the alternative, Plaintiffs argue that, even though their AOMs were untimely, their claim against Zara falls within the so-called "common knowledge" exception to the AOM Statute and therefore obviates the need for an AOM.

In traditional malpractice cases, expert testimony is needed at trial to demonstrate that a defendant breached a duty of care to a plaintiff. The common knowledge exception applies in cases where "jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of" expert knowledge. *Estate of Chin v. Saint Barnabas Medical Center*, 734 A.2d 778, 785 (N.J. 1999). It was an open question in New Jersey for some time as to whether the common knowledge exception applied to the Affidavit of Merit Statute. That question was answered in the affirmative in *Hubbard ex rel Hubbard v. Reed*, 774 A.2d 495 (N.J. 2001).

In *Hubbard*, a dentist allegedly extracted the wrong tooth from the plaintiff's mouth. *Id.* at 390. The plaintiff did not file an AOM, as she was not intending to use expert testimony at trial. *Id.* at 391. On the question of whether the common knowledge exception applied to the AOM Statute, considering the Statute's purpose of screening out frivolous claims at the outset, the court reasoned that "[i]f jurors, using ordinary understanding and experience and without the assistance of an expert, can determine whether a defendant has been negligent, the threshold of merit should be readily apparent from the reading of the plaintiff's complaint." *Id.* at 395. The New Jersey Supreme Court then instructed that the exception be "construed narrowly," and

cautioned that "the wise course of action in all malpractice cases would be for plaintiffs to provide affidavits" regardless of their plans to use or not use expert testimony at trial. *Id.* at 397.

In keeping with the New Jersey Supreme Court's guidance, the common knowledge exception to the AOM statute has been read narrowly New Jersey's state courts. To wit, the cases relied on by Plaintiff are all "exceptionally obvious." *McBride v. County of Atlantic, N.J.*, No. 10-2773, 2011 WL 3236212, at *4 (D.N.J. July 28, 2011). For instance, in *Hubbard, supra*, a dentist removed the wrong tooth. In another case cited by Plaintiffs, *Palanque v. Lambert-Woolley*, a physician misread test results which lead to unnecessary major surgery. 774 A.2d 501, 503 (N.J. 2001). In yet another seminal case, *Bender v. Walgreen Eastern Co., Inc.*, a pharmacist filled a prescription with the wrong drug. 945 A.2d 120, 122 (N.J. Super. Ct. App. Div. 2008).[5] Plaintiffs also cite to the case of *Jackson v. Fauver*, 335 F.Supp.2d 697 (D.N.J. 2004). There, all of the allegations involved the failure to provide plaintiffs with medical care that had already been prescribed to them by specialists. *Id.* at 743; *see also Grimes v. Corr. Med. Servs.*, 2010 WL 50301 (D.N.J. Feb. 8, 2010) (holding that failure to deliver prescribed medication in a timely manner falls within the common knowledge exception).

Here, by contrast, in Count Three it is claimed that Zara failed to issue Decedent "discharge instructions" when she was released from prison. *See* ECF No. 1-1. The lack of discharge instructions is unlike the pulling of a wrong tooth, *Hubbard, supra*, or even the failure to inquire into the proper course of care, *Natale, infra*. Plaintiffs would need expert testimony to establish proper standard of care when releasing patients from prison. Then, in Count Four,

---

[5] As further proof that this exception is to be construed narrowly, the common knowledge exception was found *not* to apply in *D'Amico v. Jersey Shore University Medical Center*, wherein a physician left a pebble inside plaintiff's knee during surgery. No. 5324-07, 2009 WL 2426339, at *1 (N.J. Super. Ct. App. Div. 2009). The court there ruled that expert testimony was necessary on the point of whether a pebble was "more harmful to remove ... than to leave in." *Id.*

11

Plaintiffs claim that Zara did not prescribe medication to Decedent when he knew or should have known she required them. There, we are faced with "various medical personnel's judgment as to what proper treatment should be" for certain types of pain. (*See* ECF No. 1-1; ECF No. 22 at 25); *McBride,* 2011 WL 2326212, at *5 (finding that disagreement as to pain treatment does not give rise to the common knowledge exception). These do not "smack of obvious negligence the way pulling the wrong tooth or filling a prescription with the wrong drug do." *McBride*, 2011 WL 3236212, at *5; *see also Vitale v. Carrier Clinic, Inc.*, No. 08-3472, 2009 WL 2390602 (3d Cir. 2009) (affidavit of merit required when Electro-Convulsive Therapy caused significant memory loss); *Risko v. Ciocca*, 812 A.2d 1138, 1141 (N.J. Super. Ct. App. Div. 2003) (affidavit of merit required when Decedent was discharged from hospital with internal bleeding); *Isshak v. Eichler*, No. 2734-08, 2010 WL 1030058, at *1 (N.J. Super. Ct. App. Div. 2010) (affidavit of merit required when eye surgery led to double vision and eye infection).

Given the case law in New Jersey and the New Jersey Supreme Court's directive to construe the common knowledge exception narrowly, the Court finds that Plaintiffs' allegations against Zara do not rise to the level of common knowledge negligence. Therefore, because Plaintiffs' AOMs were untimely, and because Plaintiffs' allegations do not fall within the common knowledge exception, Zara's motion to dismiss Counts Three and Four against him are granted.

### c. *Mercer County's Motion to Dismiss is Granted*

Plaintiffs allege that Mercer County, through respondeat superior, is liable for the same medical malpractice and negligence as are Defendants CFG and Zara.

Plaintiffs allege, in Counts Three and Four of the Complaint, that Mercer County is vicariously liable for medical malpractice and negligence based on the medical personnel's

failure to issue Decedent discharge instructions (Count Three) and for medical personnel's failure to prescribe Decedent pain medication they knew or should have known was required (Count Four). Mercer County moves to dismiss Plaintiffs' claims. (*See* ECF No. 20-1 at 3.)

Mercer County's motion is granted because it is immune from suit as a public entity under the New Jersey Tort Claims Act, N.J. STAT. ANN. § 59:2 *et seq. See Lowe v. Zarghani*, 741 A.2d 14 (N.J. 1999). N.J.S.A. § 59:2-1 makes clear that a public entity is generally immune from suit arising in tort, subject to delineated exceptions. N.J.S.A. § 59:2-2 specifies that a public entity is liable when an injury is "proximately caused by an act or omission of a public employee within the scope of his employment." Here, even if we accept that the injury, Decedent's death, was proximately caused by Drs. Zara and Wong, neither doctor is a public employee. Dr. Wong is a private practitioner and Dr. Zara is an employee of CFG, LLC, a private company contracted to by Mercer County.

Because Mercer County is immune from this medical malpractice suit, Mercer County's motion to dismiss is granted.

### d. *Warden Ellis' Motion to Dismiss is Denied Without Prejudice*

As there are no arguments made in Defendants' brief as to Warden Ellis, Defendants' motion to dismiss claims against Warden Ellis is denied without prejudice.

### e. *Motion to Dismiss Counts One and Two as to Defendant Wong, M.D. is Denied Without Prejudice*

Because whether or not Dr. Wong's alleged malpractice falls within the common knowledge will require the Court to consider materials outside of the pleadings[6], as such the motion by Dr. Wong claim is dismissed without prejudice. He may refile this claim as a motion

---

[6] The Third Circuit has expressly held that "the affidavit if merit is not a pleading requirement." *Nuveen Municipal Trust*, 692 F.3d at 303 (citing *Chamberlain v. Giampapa*, 210 F.3d 154, 160 (3d Cir. 2000)).

for summary judgment at the appropriate time consistent with *Nuveen Municipal Trust v. Withumsmith Brown, P.C.*, 692 F.3d 283, 303 n. 13 (3d Cir. 2012)

    2.    **Motion for Summary Judgment**

Plaintiff's motion for partial summary judgment is denied without prejudice as it is premature. Plaintiffs' motion is not ripe because no fact discovery has been exchanged and no depositions have been taken. It is necessary to have a better factual understanding of the actions or inactions of Dr. Wong. The cursory detail of the facts as alleged in the present motion is insufficient. *See* FED.R.CIV.P. 56(d); *Networld Communications v. Croatia Airlines*, 2015 WL 3461030, at *7 (D.N.J. June 1, 2015) ("Because discovery is not yet complete, Plaintiff's motion for partial summary judgment … [is] denied."); *Doe v. Abington Friends School*, 480 F.3d 252, 257 (3d Cir. 2007) ("…the summary judgment process presupposes the existence of an adequate record.").

### III. CONCLUSION

For the foregoing reasons, Defendant CFG's motion to dismiss is granted, Defendant Zara's motion to dismiss is granted, Defendants Mercer County's motion to dismiss is granted, Warden Ellis' and Christopher Wong's motions to dismiss are denied without prejudice, and Plaintiffs' motion for partial summary judgment is denied without prejudice. An appropriate Order will follow.

DATED: 8/10/15

                                                        PETER G. SHERIDAN
                                                        United States District Judge